Alan Steven Wolf, Bar No. 94665
Daniel K. Fujimoto, Bar No. 158575
THE WOLF FIRM, A Law Corporation
2955 Main Street, Second Floor
Irvine, CA 92614
Tel. No.: (949) 720-9200
Fax. No.: (949) 608-0128

Attorneys for Movant
U.S. Bank National Association, as trustee, on behalf of the
holders of the Asset Backed Securities Corporation Home
Equity Loan Trust, Series MO 2006-HE6 Asset Backed Pass-
Through Certificates, Series MO 2006-HE6

### UNITED STATES BANKRUPTCY COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: | CASE: 10-70234JG |
| EDWIN RODRIGUEZ and LOUISE GAZARD | CHAPTER: 13 |
| Debtors. | REF: ASW-787 |
| | DECLARATION OF JO-ANN GOLDMAN IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY |
| | DATE: 2/4/2011 |
| | TIME: 10:00 am |
| | CTRM: 215 |
| | U.S. Bankruptcy Court |
| | 1300 Clay Street |
| | Oakland, California |

I, JO-ANN GOLDMAN, declare:

1. I am employed by SELECT PORTFOLIO SERVICING, INC., servicing agent for Movant, a corporation organized and existing under the laws of the United States.

2. I am the Vice President of Bankruptcy and supervise administration of accounts involved in bankruptcy proceedings and the administration is maintained under my

Matter I.D. 6401-6247

control and supervision while the loan is in bankruptcy and prior to any relief being granted.

3. All loan documents, including promissory notes and deeds of trust, are kept in the ordinary course of business and at or about the time of any loan activity, entries are made in the books, records, and computers of SELECT PORTFOLIO SERVICING, INC. reflecting that activity.

4. I am informed and believe that on September 6, 2010, the Debtors filed a Chapter 13 petition. This case was filed in bad faith and for the sole purpose of thwarting Movant's foreclosure proceedings.

5. I have examined the files and records of SELECT PORTFOLIO SERVICING, INC. regarding the Note and Deed of Trust which are the subject of this Motion and I have found the following information to be true:

a. On August 16, 2006, LUIS R. CAMPOS and JUAN CAMPOS made and delivered to ARGENT MORTGAGE COMPANY, LLC , as payee, a Promissory Note secured by a Deed of Trust in the principal sum of $594,000 with the Note all due and payable on September 1, 2036. The Note and Deed encumber real property commonly known as:

> 20723 Arline Avenue, Units A, B, & C, Lakewood, CA 90715 ("Property")

and legally described as set forth in the Deed of Trust. A true and correct copy of the Note and Deed of Trust are collectively attached hereto as Exhibit "1" and Exhibit "2" and incorporated by reference.

Matter I.D. 6401-6247

b.  On August 28, 2006, a Modification Agreement was recorded to correct the property address.  A true and correct copy of the Modification Agreement is attached hereto as Exhibit "3" and incorporated herein by reference.

c.  The beneficial interest under the Deed of Trust is currently held by Movant by way of an assignment, which is attached hereto as Exhibit "4" and incorporated by reference.

d.  There was a default under the terms of the Note and Deed of Trust and on May 9, 2008, Movant caused to be recorded a Notice of Default and Election to Sell.

e.  On January 5, 2009, Movant caused to be recorded a Notice of Sale.

f.  On July 6, 2009, a Trust Transfer Grant Deed was executed and recorded which transferred interest in the subject property from Luis R. Campos to Luis R. Campos, Edwin Rodriguez and Liz Angeles as Co-Trustees of the 20723 Arline Ave Trust. A true and correct copy of this deed is attached hereto as Exhibit "5" and incorporated herein by reference.

g.  At the time the above referenced deed was executed, Liz Angeles was in an active Chapter 13 bankruptcy which was filed in the San Jose Division of this Court on June 26, 2009 as case number 09-55111.  The case was dismissed on August 13, 2009 for failure to file documents and was closed on September 25, 2009.  A true and correct copy of the

docket reflecting this information is attached hereto as Exhibit "6" and incorporated herein by reference.

h. On September 8, 2009, a second Trust Transfer Grant Deed was recorded which transferred interest in the subject property from Luis R. Campos to Luis R. Campos, Edwin Rodriguez and Ramses Garcia as Co-Trustees of the 20723 Arline Ave Trust. A true and correct of this deed is attached hereto as Exhibit "7" and incorporated herein by reference.

i. At the time the above referenced deed was executed, Ramses Garcia was in an active Chapter 13 bankruptcy which was filed in the Los Angeles Division Central District bankruptcy court on August 28, 2009 as case number 09-33125. The case was dismissed on November 2, 2009 and closed on January 20, 2010. A true and correct copy of the docket reflecting this information is attached hereto as Exhibit "8" and incorporated herein by reference.

j. On August 31, 2009, Liz Angeles filed another Chapter 13 bankruptcy in the San Jose Division of this Court as case number 09-57309. On November 20, 2009, Movant filed a Motion for Relief from Stay which set a hearing for December 8, 2009. The case was dismissed on December 7, 2009 for debtors' failure to file documents but Movant's motion was still heard on December 8, 2009 and was granted by the Court. However, the case was closed on December 29, 2009 before Movant's order granting relief was entered. A true and correct copy of the docket reflecting this

information is attached hereto as <u>Exhibit "9"</u> and incorporated herein by reference.

k.   On January 19, 2010, a third Trust Transfer Grant Deed was executed which transferred interest in the subject property from Luis R. Campos to Luis R. Campos, Edwin Rodriguez and Roderick S. Serrato as Co-Trustees of the 20723 Arline Ave Trust.  A true and correct of this deed is attached hereto as <u>Exhibit "10"</u> and incorporated herein by reference.

l.   At the time the above referenced deed was executed, Roderick S. Serrato was in an active Chapter 13 bankruptcy which he had filed with this Court on January 11, 2010 as case number 10-40266.  The case was dismissed on January 28, 2010 for failure to file information and was closed on March 2, 2010.  A true and correct copy of the docket reflecting this information is attached hereto as <u>Exhibit "11"</u> and incorporated herein by reference.

m.   On January 17, 2010, Liz Janeth Angeles filed a third Chapter 13 in the San Jose Division of this Court as case number 10-50396.  On March 12, 2010, Movant filed a Motion for Relief from Stay.  The Motion was granted and the order granting relief was entered on May 7, 2010.  The case was dismissed on July 9, 2010 and was closed on September 17, 2010.  A true and correct copy of the docket reflecting this information is attached hereto as <u>Exhibit "12"</u> and incorporated herein by reference.

Matter I.D. 6401-6247

n.  On June 10, 2010, Movant recorded a new Notice of Default.

o.  On September 6, 2010, Edwin Rodriguez filed the instant Chapter 13 with this Court.

p.  On September 13, 2010, Ramses Garcia filed a second Chapter 13 in the Los Angeles Division Central District Bankruptcy Court as case number 2:10-bk48802-EC.  The case was dismissed on September 23, 2010 for failure to file information.  A true and correct copy of the docket reflecting this information is attached hereto as <u>Exhibit "13"</u> and incorporated herein by reference.

q.  At the time of the filing of the instant case, the pre-petition arrearages under the Note and Deed of Trust were approximately $151,266.24, as set forth in <u>Exhibit "14"</u>, which is attached hereto and incorporated by reference.

r.  Since the time of the filing of the instant case, and as of November 17, 2010, the Debtors have failed to tender 2 post-petition payments and, exclusive of attorneys' fees and costs, post-petition arrearages of approximately $8,777.48 have accrued as set forth in <u>Exhibit "14"</u>.

s.  Since the time of the filing of the instant case, there have been no payments tendered by the Debtors to Movant.

t.  The total amount due under the Note and Deed of Trust as of November 17, 2010, exclusive of post-petition attorneys' fees and costs, was approximately $733,658.63

1    6.  I have personal knowledge of the foregoing, except
2  as to those matters stated under information and belief, and
3  as to those matters I believe them to be true, and if called
4  upon as a witness I could and would competently testify
5  thereto.
6        Executed this _15th_ day of _December_____, 2010
7  in the City of _Salt Lake City___, State of
8  _Utah____.
9        I declare under penalty of perjury under the laws of
10  the United States that the foregoing is true and correct.

11
12                                    JO-ANN GOLDMAN
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

# EXHIBIT 1





# ADJUSTABLE RATE NOTE
## (LIBOR Index - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY. THIS LOAN HAS A PREPAYMENT PENALTY PROVISION.

| August 16, 2006 | Orange | CA |
|---|---|---|
| Date | City | State |

20723 AIRLINE AVENUE, UNITS A, B & C, LAKEWOOD, CA 90715
Property Address

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 594,000.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is  Argent Mortgage Company, LLC.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of  7.650 %. This interest rate I will pay may change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on   October 1, 2006 .

I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on, September 1, 2036 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my payments at:   505 City Parkway West, Suite 100, Orange, CA 92868

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 4,214.52 .  This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of,  September, 2008  and on that day every  sixth  month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."

If at any point in time the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding  six percentage point(s) (6.000%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eight of one percent (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

This Certifies
·s is a True and
Correct Cor··· ·f O:··4·.

Initials: _____

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **9.650 %** or less than **7.650%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One** percentage point(s) **1.000%)** from the rate of interest I have been paying for the preceding six months My interest rate will never be greater than **13.650 %** or less than **7.650 %**.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. PREPAYMENT PRIVILEGE**

I may repay all or any part of the principal balance of this Note in accordance with the terms of this Section. A "prepayment" is any amount that I pay in excess of my regularly scheduled payments of principal and interest that the Lender will apply to reduce the outstanding principal balance on this Note in accordance with this Section.

**(A) Prepayment Made Two (2.00) year(s) After the Date of this Note**

I will not have to pay a prepayment charge if I make a prepayment on the Two (2.00) year anniversary of the date this Note is executed, or at any time thereafter.

**(B) Prepayment Made Within Two (2.00) year(s) of the Date of this Note**

I will pay Lender a prepayment charge if, in any twelve (12) month period before the Two (2.00) year anniversary of the date this Note is executed, I prepay more than 20% of the original principal balance of this Note. The prepayment charge will be six (6) months interest, at the rate then in effect on this Note, on the amount in excess of 20% of the original principal balance that I prepay within such 12 month period.

**(C) Application of Funds**

I agree that when I indicate in writing that I am making a prepayment, the Lender shall apply funds it receives first to pay any prepayment charge and next in accordance with the order of application of payments set forth in Section 2 of the Security Instrument.

**(D) Monthly Payments**

If I make a prepayment of an amount less than the amount needed to completely repay all amounts due under this Note and Security Instrument, my regularly scheduled payments of principal and interest will not change as a result.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces the principal, the reduction will be treated as a partial prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payment**

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder.

The amount of the charge will be **6.000** % of my overdue payment of principal and interest.

I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.


his Certifies
s is a True and
Correct Co....of Original
2 of 3

201-2UNIV (Rev 03/05)          Initials: _____


## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition, to the protections given to the Note Holder under this Note, A Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That the Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without the Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonable determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition of Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Oral agreements, promises or commitments to lend money, extend credit, or forbear from enforcing repayment of a debt, including promises to extend, modify, renew or waive such debt, are not enforceable. This written agreement contains all the terms the Borrower(s) and the Lender have agreed to. Any subsequent agreement between us regarding this Note or the instrument which secures this Note, must be in a signed writing to be legally enforceable.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)         _____ (Seal)
Borrower  JUAN CAMPOS                            Borrower  LUIS R. CAMPOS

_____ (Seal)         _____ (Seal)
Borrower                                         Borrower

his Certifies
Co.    s is a True and
     ct C,      Original

201-3UN9V (Rev. 03/05)                    3 of 3                      08/16/2006 1:11:46 PM

# EXHIBIT  2

   

**This page is part of your document - DO NOT DISCARD**

## 06 1909056

**RECORDED/FILED IN OFFICIAL RECORDS**
**RECORDER'S OFFICE**
**LOS ANGELES COUNTY**
**CALIFORNIA**
**08/28/06 AT 08:00am**

**TITLE(S) :** _____





L E A D   S H E E T

**FEE**                                                      D.T.T.



FEE $ 76 PP
DAF $ 2
C-20        24

**CODE**
**20**

**CODE**
**19**

**CODE**
**9**____

NOTIFICATION SENT $4

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**    **Number of AIN's Shown**



**THIS FORM IS NOT TO BE DUPLICATED**

UgTic

Recording Requested By:
**Argent Mortgage Company, LLC**

Return To.
**Argent Mortgage Company, LLC
C/O Nationwide Title Clearing,
2100 Alt 19 North
Palm Harbor, FL 34683**

Prepared By.**Argent Mortgage Company, LLC
Mark Burns
One City Boulevard West
Orange, CA 92868**

**06 1909056**

——————————— [Space Above This Line For Recording Data] ———————————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **August 16, 2006**
together with all Riders to this document.
**(B) "Borrower"** is **LUIS R. CAMPOS, A Married Man, As his Sole and Separate
Property and JUAN CAMPOS, A Married Man, As
his Sole and Separate Property, As Joint Tenants**

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is **Argent Mortgage Company, LLC**

Lender is a **Limited Liability Company**
organized and existing under the laws of **Delaware**

**CALIFORNIA**-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3005  1/01

-6(CA) (0005)
Page 1 of 15          Initial
VMP MORTGAGE FORMS - (800)521-7291

08/16/2006 1:11:46 PM

d06-01ca (05/2005)Rev 01

Case: 10-70234    Doc# 19-1    Filed: 01/12/11    Entered: 01/12/11 18:01:57    Page 14
of 88

Lender's address is 3 **Park Plaza - 10th Floor  Irvine, CA 92614**

Lender is the beneficiary under this Security Instrument.
**(D) "Trustee"** is **Town and Country Title Services, Inc.**

**(E) "Note"** means the promissory note signed by Borrower and dated **August 16, 2006**
The Note states that Borrower owes Lender **five hundred ninety-four thousand and 00/100**                                                                        Dollars
(U.S. $**594,000.00**          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **September 1, 2036**
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower  The following Riders are to be executed by Borrower [check box as applicable]:

[x] Adjustable Rate Rider    [ ] Condominium Rider           [ ] Second Home Rider
[ ] Balloon Rider            [ ] Planned Unit Development Rider  [x] 1-4 Family Rider
[ ] VA Rider                 [ ] Biweekly Payment Rider       [ ] Other(s) [specify]

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

VMP®-6(CA) (0005)          Page 2 of 15     08/16/2006 1:11:46    Initials      Form 3005  1/01

**06 1909056**

D06-02CA (05/2005)Rev 01

4

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note  For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

| County | of | LOS ANGELES | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

**EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF:**

Parcel ID Number  7058-013-012                          which currently has the address of
**20723 AIRLINE AVENUE, UNITS A, B & C**                                               [Street]
**LAKEWOOD**                                              [City], California  90715          [Zip Code]
("Property Address")

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS  Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U S

Initials

-6(CA) (0005)                          Page 3 of 15  08/16/2006 1:11:46 PM  Form 3005  1/01

**06 1909056**

(05/2005)Rev 01

Printed on:10/29/2010 2:09 PM

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note, (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be



-6(CA) (0005)                                   Page 4 of 15        08/16/2006 1:11:46    Form 3005  1/01

**06 1909056**

D06-04CA (05/2005)Rev 01

Printed on:10/29/2010 2:09 PM

Case: 10-70234    Doc# 19-1    Filed: 01/12/11    Entered: 01/12/11 18:01:57    Page 17 of 88



in writing  In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA  Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge  Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA  If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly  payments

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any  To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower  (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

 -6(CA) (0005)                 Page 5 of 15        08/16/2006 1:11:46   Form 3005  1/01

D06-05CA (05/2005)Rev 01                                                              06 1909056

Printed on:10/29/2010 2:09 PM

Case: 10-70234    Doc# 19-1    Filed: 01/12/11    Entered: 01/12/11 18:01:57    Page 18
of 88



lien  Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender  Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with


-6(CA) (9906) 02                          Page 6 of 15              08/16/2006 1:11:46       Form 3005  3/99

Initials

**06  1909056**

D06-06CA (05/2005)Rev 01

Printed on:10/29/2010 2:09 PM

Case: 10-70234     Doc# 19-1     Filed: 01/12/11     Entered: 01/12/11 18:01:57     Page 19
of 88



the excess, if any, paid to Borrower Such insurance proceeds shall be applied in the order provided for in Section 2

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration

Lender or its agent may make reasonable entries upon and inspections of the Property If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to, (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

-6(CA) (0005)    Page 7 of 15    08/16/2006 1:11:46  Form 3005  1/01

**06  1909056**

D06-07CA (05/2005)Rev 01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance " Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

VMP®-6(CA) (0005)             Page 8 of 15     08/16/2006 1:11:46   Form 3005  1/01

D06-08CA (05/2005)Rev 01                     **06  1909056**

**(b)** Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

  -6(CA) (0005)          Page 9 of 15    08/16/2006 1:11:46    Form 3005 1/01

D06-09CA (05/2005)Rev 01

**06 1909056**

Printed on:10/29/2010 2:09 PM

Case: 10-70234    Doc# 19-1    Filed: 01/12/11    Entered: 01/12/11 18:01:57    Page 22
of 88

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then· (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

-6(CA) (0005)                     Page 10 of 15      08/16/2006 1:11:46     Form 3005  1/01

**06 1909056**

D06-10CA (05/2005)Rev 01



**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

-6(CA) (0005)                          Page 11 of 15          08/16/2006 1:11:46          Form 3005  1/01

**06 1909056**

D06-11CA (05/2005)Rev 01



requires in connection with a notice of transfer of servicing  If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20

**21. Hazardous Substances.** As used in this Section 21  (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances  gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection, (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property  Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products)

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

  -6(CA) (0005)                           Page 12 of 15    08/16/2006 12:11:46   Form 3005  1/01

D06-12CA (05/2005)Rev 01                                                        06  1909056

Case: 10-70234    Doc# 19-1    Filed: 01/12/11    Entered: 01/12/11 18:01:57    Page 25
of 88



NON-UNIFORM COVENANTS  Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses

_____     _____ (Seal)

         JUAN CAMPOS         -Borrower

_____     _____ (Seal)

         LUIS R. CAMPOS       -Borrower

_____ (Seal)     _____ (Seal)
         -Borrower                   -Borrower

_____ (Seal)     _____ (Seal)
         -Borrower                   -Borrower

_____ (Seal)     _____ (Seal)
         -Borrower                   -Borrower

-6(CA) (0005)        Page 14 of 15   08/16/2006 1:11:46 PM Form 3005   1/01

(05/2005)Rev 01              06 1909056

16

**State of California**

County of Los Angeles } ss:

On 8/17/2006 before me, _Julia Anaya, Notary Public_
Day/Month/Year                              Notary Public

personally appeared _Juan Campos & Luis Campos_

personally known to me (or proven to me on the basis of satisfactory evidence) to be the person(s) whose name(s) ie/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument

Witness my hand and official seal

 ___ (Seal)
Notary Public



Page 15 of 15



08/16/2006 1 11 46 PM

400-15CA (05/2005)Rev 01                               06 1909056



**ILLEGIBLE NOTARY SEAL DECLARATION**

**GOVERNMENT CODE 27361.7**

I certify under penalty of perjury that the notary seal on the document to which this statement is attached reads as follows:

Name of Notary _____ Julia Anaya _____

Date Commission Expires _____ 2-20-2010 _____

Notary Identification Number _____ 1646593 _____
(For Notaries commissioned after 1-1-1992)

Manufacturer/Vendor Identification Number _____ NNA1 _____
(For Notaries commissioned after 1-1-1992)

Place of Execution of this Declaration _____ **NORWALK** _____

Date _____ AUG 2 8 2006 _____

**CIVIC CENTER TITLE SERVICES**

_____
**Signature (Firm name if any)**

**MARVIN COLE, AGENT**

**06  1909056**



**UNITED INDEPENDENT TITLE INSURANCE COMPANY**
**ORDER NO.** 123381

The land referred to in this Report is situated in the County of LOS ANGELES, State of California, and is described as follows

LOT 23 IN BLOCK 4 OF TRACT NO. 10263, IN THE CITY OF LAKEWOOD, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 149, PAGES 1 THROUGH 3 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY

EXHIBIT "A"

9

06 1909056



# ADJUSTABLE RATE RIDER
### (LIBOR Six-Month-Index (As Published in the Wall Street Journal)- Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 16th day of August , 2006   and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Argent Mortgage Company, LLC (the "Lender") of the same date and covering the property described in the Security Instrument and located at.

20723 AIRLINE AVENUE, UNITS A, B & C, LAKEWOOD, CA  90715
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS**. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows

**A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of  **7.650 %**  The Note provides for changes in the interest rate and the monthly payments, as follows:

**4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES**
  **(A) Change Dates**
The interest rate I will pay may change on the first day of  **September, 2008** , and on that day every sixth  month thereafter. Each date on which my interest rate could change is called a "Change Date "

  **(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index   The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in the Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index "

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information   The Note Holder will give me notice of this choice

Initials

Loan Number: ████████████

610-1 (Rev 1/01)                          Page 1 of 3

06  1909056                        08/16/2006 1.11:46 PM

Printed on:10/29/2010 2:09 PM
Case: 10-70234     Doc# 19-1     Filed: 01/12/11     Entered: 01/12/11 18:01:57     Page 31
of 88



### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **six** percentage points ( **6.000 %**) to the Current Index  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments.  The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **9.650% or less than 7.650%.** Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One( 1.000 %)** from the rate of interest I have been paying for the preceding   six months. My interest rate will never be greater than 13 650)% or less than 7 650)%

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

Loan Number.  ▉▉▉▉▉▉▉▉▉▉▉                    Initials

610-2 (11/2005) Rev  1                           Page 2 of 3

08/16/2006 1 11 46 PM
**06  1909056**



If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law. Lender also shall not exercise this option if (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee, and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing. If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)        _____ (Seal)
Borrower JUAN CAMPOS                    Borrower LUIS R  CAMPOS

_____ (Seal)        _____ (Seal)
Borrower                                Borrower

Loan Number: ▮▮▮▮▮▮▮

810-3 (Rev 1/01)                    Page 3 of 3

08/16/2006 1:11:46 PM

06  1909056



# 1-4 FAMILY RIDER
### (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this **16th**          day of **August, 2006**                  ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to **Argent Mortgage Company, LLC**

(the
"Lender") of the same date and covering the Property described in the Security Instrument and located at:
**20723 AIRLINE AVENUE, UNITS A, B & C, LAKEWOOD, CA   90715**

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to
the Property described in the Security Instrument, the following items now or hereafter attached to the
Property to the extent they are fixtures are added to the Property description, and shall also constitute the
Property covered by the Security Instrument building materials, appliances and goods of every nature
whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the
Property, including, but not limited to, those for the purposes of supplying or distributing heating,
cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and
access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves,
refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens,
blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings,
all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the
Property covered by the Security Instrument. All of the foregoing together with the Property described in
the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to
in this 1-4 Family Rider and the Security Instrument as the "Property."

MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Initials
Page 1 of 4                                                           Form 3170 1/01
VMP-57R (0008)               VMP MORTGAGE FORMS - (800)521-7291    08/16/2006 1:11:46 PM

06 1909056

Case: 10-70234    Doc# 19-1    Filed: 01/12/11    Entered: 01/12/11 18:01:57    Page 34
of 88



**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii)

08/16/2006 1:11:46 PM

Initials

-57R (0008)                 Page 2 of 4                 Form 3170 1/01

**06 1909056**

Printed on:10/29/2010 2:09 PM
Case: 10-70234    Doc# 19-1    Filed: 01/12/11    Entered: 01/12/11 18:01:57    Page 35
of 88



Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

08/16/2006 1:11:46 PM

Initials: _____

VMP®-57R (0008)                              Page 3 of 4                              Form 3170 1/01

O08·28·06

06 1909056

Printed on:10/29/2010 2:09 PM



BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider

_____ (Seal)          _____ (Seal)
JUAN CAMPOS                -Borrower       LUIS R. CAMPOS             -Borrower

_____ (Seal)          _____ (Seal)
                           -Borrower                                  -Borrower

_____ (Seal)          _____ (Seal)
                           -Borrower                                  -Borrower

_____ (Seal)          _____ (Seal)
                           -Borrower                                  -Borrower

VMP-57R (0008)                    Page 4 of 4                Form 3170 1/01
                                                            08/16/2006 1:11:46 PM

06 1909056

# EXHIBIT 3



**This page is part of your document - DO NOT DISCARD**

**06 1909057**

**RECORDED/FILED IN OFFICIAL RECORDS**
**RECORDER'S OFFICE**
**LOS ANGELES COUNTY**
**CALIFORNIA**
**08/28/06 AT 08:00am**

**TITLE(S) :**





L E A D    S H E E T

**FEE**

| FEE $10 | PP |
|---------|----|
| DAF $2  |    |
| C-20    | 2  |

**D.T.T.**

**CODE
20**

**CODE
19**     NCPF Code 19   $ _____

**CODE
9____**

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**     **Number of AIN's Shown**

**THIS FORM IS NOT TO BE DUPLICATED**



When recorded, mail to

Argent Mortgage Company, LLC
3 Park Plaza, 19th Floor
Irvine, CA 92614

Loan Number. ▊▊▊▊▊▊▊

06 1909057

## MODIFICATION AGREEMENT

This agreement made on August 16, 2006 , by and between Argent Mortgage Company, LLC herein designated as the BENEFICIARY and LUIS R. CAMPOS, A Married Man, As his Sole and Separate Property and JUAN CAMPOS, A Married Man, As his Sole and Separate Property, As Joint Tenants WHEREAS, BENEFICIARY is the holder of a certain promissory Note executed by Borrower(s) in the total amount of $ 564,000.00 , dated August 16, 2006 , which Note is secured by Deed of Trust dated August 16, 2006 recorded in the Office of the County Recorder of LOS ANGELES County, as Instrument Number on of official records of said County. **CONCURRENTLY HEREWITH**

NOW THEREFORE, for value received, the parties hereto modify the above referenced [X] Note and/or [X] Deed of Trust and/or [X] ALL OTHER LOAN DOCUMENTS as follows:

**THIS MODIFICATION AGREEMENT IS BEING EXECUTED TO CORRECT THE PROPERTY ADDRESS TO "20723 ARLINE AVENUE, UNITS A, B & C "**

### SEE EXHIBIT "A" ATTACHED

Nothing herein contained in any manner whatsoever, alter, amend, modify or changed any other terms or conditions of the above referenced [X] Note and/or [X] Deed of Trust and/or [X] ALL OTHER LOAN DOCUMENTS except as to the Modification described above, nor shall any of the rights of the BENEFICIARY thereunder be specifically prejudiced by reason of this modification; all rights of the beneficiary shall be and shall remain in full force as though the Modification has been originally specified in the original Note and/or Deed of Trust.

BORROWERS:

_____
JUAN CAMPOS

_____
LUIS R. CAMPOS

_____

_____

State of California
County of Los Angeles

On August 23, 2006 , before me Julia Anaya , Notary Public
, personally appeared
Juan Campos and Luis R. Campos , personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within Instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed this Modification Agreement.

JULIA ANAYA
Commission # 1646697
Notary Public - California
Los Angeles County
My Comm. Expires Feb 20, 2010

M0DWHL2 (Rev 02 03/2005)

The land referred to in this Report is situated in the County of LOS ANGELES, State of California, and is described as follows

LOT 23 IN BLOCK 4 OF TRACT NO. 10263, IN THE CITY OF LAKEWOOD, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 149, PAGES 1 THROUGH 3 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY

EXHIBIT "A"

9

**06 1909057**

# EXHIBIT 4



**This page is part of your document - DO NOT DISCARD**



# 20090007621



Pages:
0004

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**01/05/09 AT 08:00AM**

| | | |
|---|---|---|
| FEES: | | 17.00 |
| TAXES: | | 0.00 |
| OTHER: | | 0.00 |
| PAID: | | 17.00 |

## TITLE(S) : ASSIGNMENT TRUST DEED





**L E A D S H E E T**



200901050210006



001160196

**SEQ:**
**06**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**



01/05/2009

*20090007621*

2

RECORDING REQUESTED BY

When recorded return to :
Richmond Monroe Group
15511 State Highway 13
Branson West, MO. 65737
SPS # 0010126167

Loan Number  0101341915 - 9501 08 0052

08-21074

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# CORPORATION ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to  U.S. Bank National
___Association, as trustee, on behalf of the holders of the Asset___
Backed Securities Corporation Home Equity Loan Trust Series **

all beneficial interest under that certain Deed of Trust dated  08/16/06        , executed by
LUIS R. CAMPOS, A Married Man, As his Sole and Separate Property and JUAN CAMPOS, A Married Man, As  his
Sole and Separate Property, As Joint Tenants
                                                                                         , Trustor
    ** MO 2006-HE6 Asset Backed Pass-Through Certificates, Series
    MO 2006-HE6

to  Town and Country Title Services, Inc., Trustee
and recorded as Instrument No. 06 1909056 On 8/28/06 in book          , page          , of Official Records in the County
Recorder's office of     LOS ANGELES        County, California, describing land therein as:

                    "EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF"

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with
interest, and all rights accrued under said Deed of Trust.

                                                                Argent Mortgage Company, LLC

    Dated  08/29/2006

                                                                JESSICA OTT - AGENT

**State of  California**                                 )
**County of   Orange**                                 ) ss.
                                                       )
                                                       )
  On  08/29/2006  before me,  MARTHA LONDON
personally appeared  JESSICA OTT
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that  by his/her/their signature(s) on the instrument the person(s) or the entity upon
behalf of which is the person(s) acted,  executed the instrument

WITNESS my hand and official seal.                       FOR NOTARIAL SEAL OR STAMP

_____  (Seal)

MARTHA LONDON                                            MARTHA LONDON
                                                         Commission # 1554166
                                                         Notary Public - California
                                                         Orange County
                                                         My Comm. Expires Feb 20, 2009

Title Order No.  123381              Escrow No.  123381

750-CA1  (12/2005) Rev 03

Case: 10-70234    Doc# 19-1    Filed: 01/12/11    Entered: 01/12/11 18:01:57    Page 44
of 88

*3*

BORROWER NAME:    CAMPOS

LOAN NUMBER:   0101341915 - 9501

## LEGAL DESCRIPTION

EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF:

LEGAL2 (11/2005) Rev  01

EXHIBIT 'A'

## UNITED INDEPENDENT TITLE INSURANCE COMPANY
### ORDER NO. 123381

The land referred to in this Report is situated in the County of LOS ANGELES, State of California, and is described as follows:

LOT 23 IN BLOCK 4 OF TRACT NO. 10263, IN THE CITY OF LAKEWOOD, COUNTY
OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK
149, PAGES 1 THROUGH 3 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY.

EXHIBIT "A"

9



# EXHIBIT 5

RECORDING REQUESTED BY:
**LUIS R. CAMPOS AS CO-TRUSTEE**

AND WHEN RECORDED MAIL THIS DEED AND, UNLESS
OTHERWISE SHOWN BELOW, MAIL TAX STATEMENTS TO:
**LUIS R. CAMPOS
20723 ARLINE AVE
LAKEWOOD CA 90715**

07/06/2009

*20091006339*

---

A.P.N.: 7058-013-012

# TRUST TRANSFER GRANT DEED

THE UNDERSIGNED GRANTOR (S) DECLARE (S) UNDER PENALTY OF PERJURY THAT THE FOLLOWING IS TRUE AND CORRECT:
DOCUMENTARY TRANSFER TAX IS $ NONE
[] Computed on full value of property conveyed, or[] computed on full value less value of liens or encumbrances remaining at time of sale or transfer.
[X] "This conveyance transfers an interest into or out of a living trust R & T 11930."

---

[] Unincorporated area:                [X] city of **LAKEWOOD**  AND

GRANTOR (S): **LUIS R. CAMPOS** hereby GRANT (S) TO: **LUIS R. CAMPOS, EDWIN RODRIGUEZ AND LIZ ANGELES AS CO-TRUSTEES OF THE 20723 ARLINE AVE  TRUST**  the following described real property in the County, of **LOS ANGELES**, State of California:

LOT 23 IN BLOCK 4, OF TRACT NO. 10263, IN THE CITY OF LAKEWOOD, COUNTY OF LOS ANGELES, STATE OF CA, AS PER MAP RECORDED IN BOOK 149, PAGES 1 THROUGH 3, INCLUSIVE OF MAPS, RECORDED IN THE OFFICE OF THE COUNTY RECORDER OF LOS ANGELES COUNTY.

Dated: _7/10/2009_

_Luis R. Campos by Edwin Rodriguez_ _as his attorney-in-fact_
LUIS R. CAMPOS BY EDWIN RODRIGUEZ AS HIS ATTORNEY IN
FACT

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES} SS.
On _July 6th 2009_              before me _Jennifer E. Figueroa_ Notary Public, personally appeared
_Edwin Rodriguez_                        who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand official seal.

**JENNIFER E. FIGUEROA**
**Commission # 1708903**
**Notary Public - California**
**Los Angeles County**
**My Comm. Expires Dec 5, 2010**

Signature _____

(This area for official notarial seal)

MAIL TAX STATEMENTS AS DIRECTED ABOVE

# EXHIBIT 6

FeeDueINST, DebtEd, DISMISSED, CLOSED

# U.S. Bankruptcy Court
## Northern District of California (San Jose)
### Bankruptcy Petition #: 09-55111

| | |
|---|---|
| | *Date filed:* 06/26/2009 |
| *Assigned to:* Judge Roger L. Efremsky | *Date terminated:* 09/25/2009 |
| Chapter 13 | *Debtor dismissed:* 08/13/2009 |
| Voluntary | |
| Asset | |

*Debtor disposition:* Dismissed for Failure to File Information

**Debtor**
**Liz Angeles**
884 Chestnut St.
San Jose, CA 95110
SSN / ITIN: xxx-xx-6429
*aka*
**Liz Padilla**

represented by **Liz Angeles**
PRO SE

**Trustee**
**Devin Derham-Burk**
P.O. Box 50013
San Jose, CA 95150-0013
(408) 354-8151

**U.S. Trustee**
**Office of the U.S. Trustee / SJ**
U.S. Federal Bldg.
280 S 1st St. #268
San Jose, CA 95113-3004
( )

| Filing Date | # | Docket Text |
|---|---|---|
| 06/26/2009 | 1 | Chapter 13 Voluntary Petition, Fee Amount $65.00. Filed by Liz Angeles . Section 521 Filings due by 8/10/2009. Order Meeting of Creditors due by 7/27/2009. Chapter 13 Plan due by 7/13/2009. (tp) (Entered: 06/26/2009) |
| 06/26/2009 | 2 | Statement of Social Security Number. Filed by Debtor Liz Angeles (tp) (Entered: 06/26/2009) |

Case: 10-70234     Doc# 19-1     Filed: 01/12/11     Entered: 01/12/11 18:01:57     Page 50 of 88

| | | |
|---|---|---|
| 06/26/2009 | 3 | Chapter 13 Plan Filed by Debtor Liz Angeles (RE: related document(s) 1 Voluntary Petition (Chapter 13) filed by Debtor Liz Angeles). (tp) (Entered: 06/26/2009) |
| 06/26/2009 | 4 | Application to Pay Filing Fee in Installments Filed by Debtor Liz Angeles (tp) (Entered: 06/26/2009) |
| 06/26/2009 | 5 | Order Granting Application To Pay Filing Fees In Installments. (Related Doc # 4 ). Second Installment Payment due by 7/27/2009. Third Installment Payment due by 8/25/2009. Final Installment Payment due by 9/24/2009. (tp) (Entered: 06/26/2009) |
| 06/26/2009 | | Receipt of First Installment Filing Fee for Chapter 13 Voluntary Petition. Amount 65.00 from Liz Angeles. Receipt Number 50070495. (tp) (Entered: 06/26/2009) |
| 06/28/2009 | 6 | BNC Certificate of Mailing - Order for Payment of Filing Fees in Installments . (RE: related document(s) 5 Order on Application to Pay Filing Fees in Installments). Service Date 06/28/2009. (Admin.) (Entered: 06/28/2009) |
| 06/29/2009 | 7 | Order To File Required Documents and Notice Regarding Dismissal. . (aw) (Entered: 06/29/2009) |
| 06/29/2009 | 8 | Notice of Bankruptcy Case, Meeting of Creditors, and Deadlines (Generated) (aw) COURT ERROR: GENERATED IN ERROR. DISREGARD DOCKET ENTRY. Modified on 6/29/2009 (aw). (Entered: 06/29/2009) |
| 07/01/2009 | 9 | BNC Certificate of Mailing (RE: related document(s) 7 Order to File Missing Documents). Service Date 07/01/2009. (Admin.) (Entered: 07/01/2009) |
| 07/08/2009 | 10 | Meeting of Creditors with Certificate of Service. 341(a) meeting to be held on 8/10/2009 at 03:30 PM San Jose Room 130 Objection to Dischargeability due by 10/9/2009 Proofs of Claims due by 11/9/2009 Last day to object to confirmation is 8/10/2009**Confirmation Hearing to be held on 8/20/2009 at 02:00 PM San Jose Courtroom 3099 - Efremsky** (Derham-Burk, Devin (cf)) (Entered: 07/08/2009) |
| 07/10/2009 | 11 | Request for Notice *and For Inclusion In Mailing Grid* Filed by Creditor Select Portfolio Servicing, Inc. (Wolf, Alan) (Entered: 07/10/2009) |
| | | BNC Certificate of Mailing - Meeting of Creditors. (RE: related |

| 07/10/2009 | 12 | document(s) 10 Meeting of Creditors Chapter 13). Service Date 07/10/2009. (Admin.) (Entered: 07/10/2009) |
| 07/10/2009 | 13 | BNC Certificate of Mailing - Chapter 13 Plan. (RE: related document(s) 10 Meeting of Creditors Chapter 13). Service Date 07/10/2009. (Admin.) (Entered: 07/10/2009) |
| 07/17/2009 | 14 | Request for Notice Filed by Creditor Gmac Mortgage, LLC (Johnson, Katherine) (Entered: 07/17/2009) |
| 08/13/2009 |  | Meeting of Creditors Held. *341 continued to 10/26/2009 at 3:30 PM; PHC*. (Derham-Burk, Devin) (Entered: 08/13/2009) |
| 08/13/2009 | 15 | Order and Notice of Dismissal for Failure to Comply (RE: related document(s) 7 Order to File Missing Documents). (aw) (Entered: 08/13/2009) |
| 08/15/2009 | 16 | BNC Certificate of Mailing (RE: related document(s) 15 Order and Notice of Dismissal for Failure to Comply). Service Date 08/15/2009. (Admin.) (Entered: 08/15/2009) |
| 08/20/2009 |  | Confirmation Hearing Continued re: Chapter 13 Plan. (Confirmation Hearing to be Held on 10/15/2009 02:00 PM at San Jose Courtroom 3099 - Efremsky) (cp) (Entered: 08/21/2009) |
| 09/10/2009 | 17 | Chapter 13 Trustee Final Report and Account . (Derham-Burk, Devin (harbor)) (Entered: 09/10/2009) |
| 09/24/2009 | 18 | Final Decree. (jes) (Entered: 09/25/2009) |
| 09/25/2009 |  | Bankruptcy Case Closed. (jes) (Entered: 09/25/2009) |
| 09/27/2009 | 19 | BNC Certificate of Mailing - Electronic Order (RE: related document(s) 18 Final Decree). Service Date 09/27/2009. (Admin.) (Entered: 09/27/2009) |

| **PACER Service Center** | | |
| **Transaction Receipt** | | |
| 11/01/2010 12:47:00 | | |
| **PACER Login:** | gw0015 | **Client Code:** | |
| | | | 09-55111 Fil or Ent: filed To: |

Case: 10-70234    Doc# 19-1    Filed: 01/12/11    Entered: 01/12/11 18:01:57    Page 52 of 88

| Description: | Docket Report | Search Criteria: | 11/1/2010 Doc From: 0 Doc To: 99999999 Term: included Headers: included Format: html |
| Billable Pages: | 2 | Cost: | 0.16 |

# EXHIBIT 7

**This page is part of your document - DO NOT DISCARD**



# 20091368787



**Pages:**
**0002**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**09/08/09 AT 10:51AM**

| | |
|---|---|
| FEES: | 13.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 13.00 |



**L E A D S H E E T**



**200909080070028**

**00001161989**


**002299446**

**SEQ:**
**01**

**DAR - Counter (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

*E535006*



09/08/2009

*20091368787*

RECORDING REQUESTED BY:
**LUIS R. CAMPOS** AS CO-TRUSTEE

AND WHEN RECORDED MAIL THIS DEED AND, UNLESS
OTHERWISE SHOWN BELOW, MAIL TAX STATEMENTS TO:

**LUIS R. CAMPOS**
**20723 ARLINE AVE**
**LAKEWOOD CA 90715**

**A.P.N.: 7058-013-012**

# TRUST TRANSFER GRANT DEED

THE UNDERSIGNED GRANTOR (S) DECLARE (S) UNDER PENALTY OF PERJURY THAT THE FOLLOWING IS TRUE AND CORRECT:
DOCUMENTARY TRANSFER TAX IS $ NONE

|| Computed on full value of property conveyed, or [] computed on full value less value of liens or encumbrances remaining at time of sale or transfer.

[X] "This conveyance transfers an interest into or out of a living trust R & T 11930."

[] Unincorporated area:                    [X] city of **LAKEWOOD**  AND

GRANTOR (S): **LUIS R. CAMPOS** hereby GRANT (S) TO: **LUIS R. CAMPOS, EDWIN RODRIGUEZ AND RAMSES GARCIA AS CO-TRUSTEES OF THE 20723 ARLINE AVE TRUST** the following described real property in the County, of **LOS ANGELES**, State of California:

LOT 23 IN BLOCK 4, OF TRACT NO. 10263, IN THE CITY OF LAKEWOOD, COUNTY OF LOS ANGELES, STATE OF CA, AS PER MAP RECORDED IN BOOK 149, PAGES 1 THROUGH 3, INCLUSIVE OF MAPS, RECORDED IN THE OFFICE OF THE COUNTY RECORDER OF LOS ANGELES COUNTY.

Dated: _9/8/09_

_Lois R Campos by Edi Rodgers_ as his attorney in fact
LUIS R. CAMPOS BY EDWIN RODRIGUEZ AS HIS ATTORNEY IN FACT

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES} SS.                **Kumar Venkatesan**
On _Sept 8, 2009_ _____ before me    **Notary Public** _____ Notary Public, personally appeared
_EDWIN RODRIGUEZ_ _____ who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand official seal.

KUMAR VENKATESAN
Commission # 1740984
Notary Public - California
Los Angeles County
My Comm. Expires May 20, 2011

Signature_____

# EXHIBIT 8

**CLOSED**

# U.S. Bankruptcy Court
## Central District Of California (Los Angeles)
## Bankruptcy Petition #: 2:09-bk-33125-AA

|  |  |
|---|---|
| *Assigned to:* Alan M. Ahart | *Date filed:* 08/28/2009 |
| Chapter 13 | *Date terminated:* 01/20/2010 |
| Voluntary | *Debtor dismissed:* 11/02/2009 |
| Asset |  |

*Debtor disposition:* Dismissed for Other Reason

**Debtor**                                        represented by **Ramses Garcia**
**Ramses Garcia**                                                    PRO SE
8329 Vista Del Rio Ave
Downey, CA 90240
SSN / ITIN: xxx-xx-1033

**Trustee**
**Kathy A Dockery (TR)**
700 S. Flower Street, Suite 1950
Los Angeles, CA 90017
(213) 996-4400

**U.S. Trustee**
**United States Trustee (LA)**
725 S Figueroa St., 26th Floor
Los Angeles, CA 90017

| Filing Date | # | Docket Text |
|---|---|---|
|  |  | Chapter 13 Voluntary Petition . Receipt Number o, Fee Amount $274 Filed by Ramses Garcia Section 316 Incomplete Filings due by 10/13/2009. Schedule A due 9/14/2009. Schedule B due 9/14/2009. Schedule C due 9/14/2009. Schedule D due 9/14/2009. Schedule E due 9/14/2009. Schedule F due 9/14/2009. Schedule G due 9/14/2009. Schedule H due 9/14/2009. Schedule I due 9/14/2009. Schedule J due 9/14/2009. Statement of Financial Affairs due 9/14/2009. Chapter 13 Plan due by 9/14/2009. Statement - Form 22C Due: 9/14/2009. Notice of available chapters due 9/14/2009. Statement of assistance of non-attorney due 9/14/2009. Summary of schedules due 9/14/2009. Declaration concerning debtors schedules due 9/14/2009. Cert. of Credit Counseling due by 9/14/2009. Statistical Summary due |

| | | |
|---|---|---|
| 08/28/2009 | 1 | 9/14/2009. Debtor Certification of Employment Income due by 9/14/2009. Incomplete Filings due by 9/14/2009. (Suarez, Romeo) (Entered: 08/28/2009) |
| 08/28/2009 | 2 | Meeting of Creditors with 341(a) meeting to be held on 09/30/2009 at 04:00 PM at RM 103, 725 S Figueroa St, Los Angeles, CA 90017. Confirmation hearing to be held on 10/22/2009 at 09:30 AM at Crtrm 1375, 255 E Temple St., Los Angeles, CA 90012. Proof of Claim due by 12/29/2009. (Suarez, Romeo) (Entered: 08/28/2009) |
| 08/28/2009 | 3 | Statement of Social Security Number(s) Form B21 Filed by Debtor Ramses Garcia . (Suarez, Romeo) (Entered: 08/28/2009) |
| 08/28/2009 | | Receipt of Chapter 13 Filing Fee - $274.00 by 04. Receipt Number 20064768. (admin) (Entered: 08/31/2009) |
| 08/30/2009 | 4 | BNC Certificate of Service (RE: related document(s) 2 Meeting (AutoAssign Chapter 13)) No. of Notices: 6. Service Date 08/30/2009. (Admin.) (Entered: 08/30/2009) |
| 08/30/2009 | 5 | BNC Certificate of Service (RE: related document(s) 1 Voluntary Petition (Chapter 13) filed by Debtor Ramses Garcia) No. of Notices: 2. Service Date 08/30/2009. (Admin.) (Entered: 08/30/2009) |
| 08/30/2009 | 6 | BNC Certificate of Service (RE: related document(s) 1 Voluntary Petition (Chapter 13) filed by Debtor Ramses Garcia) No. of Notices: 2. Service Date 08/30/2009. (Admin.) (Entered: 08/30/2009) |
| 09/22/2009 | 7 | Notice of Hearing Filed by Trustee Kathy A Dockery. (Dockery, Kathy) (Entered: 09/22/2009) |
| 10/06/2009 | 8 | Request for courtesy Notice of Electronic Filing (NEF) Filed by Ramesh Singh on behalf of Courtesy NEF. (Singh, Ramesh) (Entered: 10/06/2009) |
| 10/08/2009 | 9 | Request for courtesy Notice of Electronic Filing (NEF) Filed by Cassandra J Richey on behalf of Courtesy NEF. (Richey, Cassandra) (Entered: 10/08/2009) |
| 10/08/2009 | 10 | Request for courtesy Notice of Electronic Filing (NEF) Filed by Casper J Rankin on behalf of Courtesy NEF. (Rankin, Casper) (Entered: 10/08/2009) |
| | | ORDER and Notice of dismissal arising from chapter 13 |

Case: 10-70234   Doc# 19-1   Filed: 01/12/11   Entered: 01/12/11 18:01:57   Page 59 of 88

| | | |
|---|---|---|
| 11/02/2009 | 11 | confirmation hearing - **Debtor** Dismissed. (BNC) (May, Thais D.) (Entered: 11/02/2009) |
| 11/05/2009 | 12 | BNC Certificate of Service (RE: related document(s) 11 ORDER and Notice of Dismissal arising from Ch 13 Conf. Hrg. (BNC)) No. of Notices: 13. Service Date 11/05/2009. (Admin.) (Entered: 11/05/2009) |
| 11/30/2009 | 13 | Chapter 13 Trustee's Final Report and Account . (Dockery, Kathy) (Entered: 11/30/2009) |
| 11/30/2009 | 14 | Proof of service Filed by Trustee Kathy A Dockery (RE: related document(s) 13 Chapter 13 Trustee's Final Report and Account (batch)). (Dockery, Kathy) (Entered: 11/30/2009) |
| 12/09/2009 | 15 | ORDER discharging chapter 13 panel trustee and exonerate bond liability Signed on 12/9/2009. (Peters, Sandra) (Entered: 12/10/2009) |
| 01/20/2010 | 16 | Bankruptcy Case Closed - DISMISSED (Vandensteen, Nancy) (Entered: 01/20/2010) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 11/01/2010 12:48:18 | | |
| **PACER Login:** | gw0015 | **Client Code:** |
| **Description:** | Docket Report | **Search Criteria:** | 2:09-bk-33125-AA Fil or Ent: filed To: 11/1/2010 Doc From: 0 Doc To: 99999999 Term: included Format: html |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |

# EXHIBIT 9

PlnDue, DebtEd, DISMISSED, CLOSED

# U.S. Bankruptcy Court
## Northern District of California (San Jose)
### Bankruptcy Petition #: 09-57309

|  |  |
|---|---|
| | *Date filed:* 08/31/2009 |
| *Assigned to:* Judge Arthur S. Weissbrodt | *Date terminated:* 12/29/2009 |
| Chapter 13 | *Debtor dismissed:* 12/07/2009 |
| Voluntary | |
| Asset | |

*Debtor disposition:* Dismissed for Failure to File Information

| **Debtor** | represented by **Liz Angeles** |
|---|---|
| **Liz Angeles** | PRO SE |
| 884 Chestnut St. | |
| San Jose, CA 95110 | |
| SSN / ITIN: xxx-xx-6429 | |
| *aka* | |
| **Liz Padilla** | |

**Trustee**
**Devin Derham-Burk**
P.O. Box 50013
San Jose, CA 95150-0013
(408) 354-8151

**U.S. Trustee**
**Office of the U.S. Trustee / SJ**
U.S. Federal Bldg.
280 S 1st St. #268
San Jose, CA 95113-3004
( )

| Filing Date | # | Docket Text |
|---|---|---|
| 08/31/2009 | 1 | Chapter 13 Voluntary Petition, Fee Amount $90.00. Filed by Liz Angeles . Section 521 Filings due by 10/15/2009. Order Meeting of Creditors due by 9/30/2009. Chapter 13 Plan due by 9/15/2009. (tp) ERROR: EXHIBIT C AND INFORMATION REGARDING DEBTOR VENUE BOXES NOT SELECTED. Modified on 9/1/2009 (no). (Entered: 08/31/2009) |
| | | Statement of Social Security Number. Filed by Debtor Liz |

Case: 10-70234   Doc# 19-1   Filed: 01/12/11   Entered: 01/12/11 18:01:57   Page 62 of 88

| 08/31/2009 | 2 | Angeles (tp) (Entered: 08/31/2009) |
|---|---|---|
| 08/31/2009 | 3 | Application to Pay Filing Fee in Installments Filed by Debtor Liz Angeles (tp) (Entered: 08/31/2009) |
| 08/31/2009 | 4 | Order Granting Application To Pay Filing Fees In Installments. (Related Doc # 3 ). Second Installment Payment due by 9/30/2009. Third Installment Payment due by 10/30/2009. Final Installment Payment due by 11/30/2009. (tp) (Entered: 08/31/2009) |
| 08/31/2009 | | Receipt of First Installment Filing Fee for Chapter 13 Voluntary Petition. Amount 90.00 from Liz Angeles. Receipt Number 50071210. (tp) (Entered: 08/31/2009) |
| 09/01/2009 | 5 | Order To File Required Documents and Notice Regarding Dismissal . (no) (Entered: 09/01/2009) |
| 09/01/2009 | 6 | Order Providing for Dismissal for Failure to File Chapter 13 Plan . (no) (Entered: 09/01/2009) |
| 09/03/2009 | 7 | BNC Certificate of Mailing - Order for Payment of Filing Fees in Installments . (RE: related document(s) 4 Order on Application to Pay Filing Fees in Installments). Service Date 09/03/2009. (Admin.) (Entered: 09/03/2009) |
| 09/03/2009 | 8 | BNC Certificate of Mailing (RE: related document(s) 5 Order to File Missing Documents). Service Date 09/03/2009. (Admin.) (Entered: 09/03/2009) |
| 09/03/2009 | 9 | BNC Certificate of Mailing (RE: related document(s) 6 Order Providing for Dismissal). Service Date 09/03/2009. (Admin.) (Entered: 09/03/2009) |
| 09/10/2009 | 10 | Meeting of Creditors with Certificate of Service. 341(a) meeting to be held on 10/19/2009 at 03:30 PM San Jose Room 130 Objection to Dischargeability due by 12/18/2009 Proofs of Claims due by 1/19/2010 Last day to object to confirmation is 10/19/2009**Confirmation Hearing to be held on 11/2/2009 at 02:00 PM San Jose Courtroom 3020 - Weissbrodt** (Derham-Burk, Devin cf)) (Entered: 09/10/2009) |
| 09/12/2009 | 11 | BNC Certificate of Mailing - Meeting of Creditors. (RE: related document(s) 10 Meeting of Creditors Chapter 13). Service Date 09/12/2009. (Admin.) (Entered: 09/12/2009) |
| | | Motion to Extend Time for Schedules. Filed by Debtor Liz |

| | | |
|---|---|---|
| 09/15/2009 | 12 | Angeles (lub) (Entered: 09/16/2009) |
| 09/16/2009 | 13 | Order Granting Motion to Extend Time (Related Doc # 12 ) Chapter 13 Plan due by 11/27/2009 for 1 , (no) (Entered: 09/16/2009) |
| 09/16/2009 | | Deadlines Updated (RE: related document(s) 1 Voluntary Petition (Chapter 13)). Section 521 Filings due by 11/27/2009. (no) (Entered: 09/16/2009) |
| 09/18/2009 | 14 | Request for Notice Filed by Creditor Select Portfolio Servicing, Inc. (Wolf, Alan) (Entered: 09/18/2009) |
| 09/18/2009 | | Receipt of Installment Filing Fee for Chapter 13 Voluntary Petition. Amount 75.00 from Liz Angeles. Receipt Number 50071426. (admin) (Entered: 09/18/2009) |
| 09/18/2009 | 15 | BNC Certificate of Mailing - Electronic Order (RE: related document(s) 13 Order on Motion to Extend Time). Service Date 09/18/2009. (Admin.) (Entered: 09/18/2009) |
| 09/25/2009 | 16 | Request for Notice *PROOF OF SERVICE* Filed by Creditor Specialized Loan Servicing LLC (Buckley, Lawrence) (Entered: 09/25/2009) |
| 10/20/2009 | | Meeting of Creditors Held. *341 continued to 12/21/2009 at 3:30 PM; PHC*. (Derham-Burk, Devin) (Entered: 10/20/2009) |
| 10/20/2009 | | Receipt of Installment Filing Fee for Chapter 13 Voluntary Petition. Amount 65.00 from Liz Angeles. Receipt Number 50071753. (admin) (Entered: 10/20/2009) |
| 10/27/2009 | 17 | Objection to Confirmation of Chapter 13 Plan *with Certificate of Service*. (Derham-Burk, Devin (harbor)) (Entered: 10/27/2009) |
| 11/02/2009 | | Confirmation Hearing Continued re: Chapter 13 Plan. (Confirmation Hearing to be Held on 11/30/2009 02:00 PM at San Jose Courtroom 3020 - Weissbrodt) (tb) (Entered: 11/02/2009) |
| 11/20/2009 | 18 | Motion for Relief from Stay RS #ASW-639, Fee Amount $150, Filed by Creditor U.S. Bank National Association, as trustee, on behalf of the holders of the Asset Backed Securities Corporation Home Equity Loan Trust, Series MO 2006-HE6 Asset Backed Pass-Through Certificates, Serie (Attachments: # 1 RS Cover Sheet) (Wolf, Alan) (Entered: 11/20/2009) |

| | | |
|---|---|---|
| 11/20/2009 | | Receipt of filing fee for Motion for Relief From Stay(09-57309) [motion,mrlfsty] ( 150.00). Receipt number 9650146, amount $ 150.00 (U.S. Treasury) (Entered: 11/20/2009) |
| 11/20/2009 | <u>19</u> | Declaration of Jo-Ann Goldman in Support of *Motion for Relief from the Automatic Stay* (RE: related document(s) <u>18</u> Motion for Relief From Stay). Filed by Creditor U.S. Bank National Association, as trustee, on behalf of the holders of the Asset Backed Securities Corporation Home Equity Loan Trust, Series MO 2006-HE6 Asset Backed Pass-Through Certificates, Serie (Attachments: # <u>1</u> Exhibit 1# <u>2</u> Exhibit 2# <u>3</u> Exhibit 3# <u>4</u> Exhibit 4# <u>5</u> Exhibit 5# <u>6</u> Exhibit 6# <u>7</u> Exhibit 7# <u>8</u> Exhibit 8) (Wolf, Alan) (Entered: 11/20/2009) |
| 11/20/2009 | <u>20</u> | Notice of Hearing *on Motion for Relief from the Automatic Stay* (RE: related document(s) <u>18</u> Motion for Relief from Stay RS #ASW-639, Fee Amount $150, Filed by Creditor U.S. Bank National Association, as trustee, on behalf of the holders of the Asset Backed Securities Corporation Home Equity Loan Trust, Series MO 2006-HE6 Asset Backed Pass-Through Certificates, Serie). **Hearing scheduled for 12/8/2009 at 02:00 PM at San Jose Courtroom 3020 - Weissbrodt.** Filed by Creditor U.S. Bank National Association, as trustee, on behalf of the holders of the Asset Backed Securities Corporation Home Equity Loan Trust, Series MO 2006-HE6 Asset Backed Pass-Through Certificates, Serie (Attachments: # <u>1</u> Certificate of Service) (Wolf, Alan) (Entered: 11/20/2009) |
| 11/20/2009 | | Receipt of Installment Filing Fee for Chapter 13 Voluntary Petition. Amount 44.00 from Liz Angeles. Receipt Number 50072157. (admin) (Entered: 11/20/2009) |
| 11/30/2009 | | Courtroom Hearing Held (RE: Meeting of Creditors Chapter 13 - related document(s) <u>10</u> ) (No appearance by debtor, case dismissed.)(tb) (Entered: 12/03/2009) |
| 12/02/2009 | <u>21</u> | Order and Notice of Dismissal for Failure to Comply (RE: related document(s) <u>5</u> Order to File Missing Documents, <u>6</u> Order Providing for Dismissal). (lub) (Entered: 12/02/2009) |
| 12/04/2009 | <u>22</u> | BNC Certificate of Mailing - Order and Notice of Dismissal for Failure to Comply. (RE: related document(s) <u>21</u> Order and Notice of Dismissal for Failure to Comply). Service Date 12/04/2009. (Admin.) (Entered: 12/04/2009) |
| 12/07/2009 | <u>23</u> | Order Dismissing Case . (lub) (Entered: 12/07/2009) |
| | | Courtroom Hearing Held (RE: Motion for Relief From Stay - |

| | | |
|---|---|---|
| 12/08/2009 | | related document(s) 18 ) (All the facts before the Court suggest that the Debtor is an innocent party in a scheme and that the Court will grant relief under 362(d)(4) with respect to the property to allow movant to exercise its State law rights with respect to the property because there appears to be a scheme to delay, hinder and or defraud creditors that involve the transfer of all or part ownership of this property without the consent of the secured creditor and without Court approval and involving multiple bankruptcy filings effecting the property.)(tb) (Entered: 12/16/2009) |
| 12/09/2009 | 24 | Chapter 13 Trustee Final Report and Account . (Derham-Burk, Devin (harbor)) (Entered: 12/09/2009) |
| 12/09/2009 | 25 | BNC Certificate of Mailing - Notice of Dismissal. (RE: related document(s) 23 Order to Dismiss Case). Service Date 12/09/2009. (Admin.) (Entered: 12/09/2009) |
| 12/09/2009 | 26 | BNC Certificate of Mailing (RE: related document(s) 23 Order to Dismiss Case). Service Date 12/09/2009. (Admin.) (Entered: 12/09/2009) |
| 12/11/2009 | 27 | Certificate of Service *of the proposed order granting motion for relief from the automatic stay* (RE: related document(s) 18 Motion for Relief From Stay). Filed by Creditor U.S. Bank National Association, as trustee, on behalf of the holders of the Asset Backed Securities Corporation Home Equity Loan Trust, Series MO 2006-HE6 Asset Backed Pass-Through Certificates, Serie (Wolf, Alan) (Entered: 12/11/2009) |
| 12/16/2009 | 28 | Final Decree. (bg) (Entered: 12/29/2009) |
| 12/29/2009 | | Bankruptcy Case Closed. (bg) (Entered: 12/29/2009) |
| 12/31/2009 | 29 | BNC Certificate of Mailing - Electronic Order (RE: related document(s) 28 Final Decree). Service Date 12/31/2009. (Admin.) (Entered: 12/31/2009) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 11/01/2010 12:51:37 | | |
| **PACER** | gw0015 | **Client** |

Case: 10-70234   Doc# 19-1   Filed: 01/12/11   Entered: 01/12/11 18:01:57   Page 66 of 88

| Login: | | Code: | |
|---|---|---|---|
| **Description:** | Docket Report | **Search Criteria:** | 09-57309 Fil or Ent: filed To: 11/1/2010 Doc From: 0 Doc To: 99999999 Term: included Headers: included Format: html |
| **Billable Pages:** | 3 | **Cost:** | 0.24 |

# EXHIBIT  10

RECORDING REQUESTED BY:
LUIS R. CAMPOS AS CO-TRUSTEE

AND WHEN RECORDED MAIL THIS DEED AND, UNLESS
OTHERWISE SHOWN BELOW, MAIL TAX STATEMENTS TO:
LUIS R. CAMPOS
20723 ARLINE AVE
LAKEWOOD CA 90715

A.P.N.: 7058-013-012

# TRUST TRANSFER GRANT DEED

THE UNDERSIGNED GRANTOR (s) DECLARE (S) UNDER PENALTY OF PERJURY THAT THE FOLLOWING IS TRUE AND CORRECT:
DOCUMENTARY TRANSFER TAX IS $ NONE
[] Computed on full value of property conveyed, or [] computed on full value less value of liens or encumbrances remaining at time of sale or transfer.
[X] "This conveyance transfers an interest into or out of a living trust R & T 11930."

[] Unincorporated area:                     [X] city of LAKEWOOD AND

GRANTOR (S): LUIS R. CAMPOS hereby GRANT|(S) TO: LUIS R. CAMPOS, EDWIN RODRIGUEZ AND RODERICK S. SERRATO AS CO-TRUSTEES OF THE 20723 ARLINE AVE TRUST the following described real property in the County, of LOS ANGELES, State of California:

LOT 23 IN BLOCK 4, OF TRACT NO. 10263, IN THE CITY OF LAKEWOOD, COUNTY OF LOS ANGELES, STATE OF CA, AS PER MAP RECORDED IN BOOK 149, PAGES 1 THROUGH 3, INCLUSIVE OF MAPS, RECORDED IN THE OFFICE OF THE COUNTY RECORDER OF LOS ANGELES COUNTY.

Dated: 1/19/2010

LUIS R. CAMPOS BY EDWIN RODRIGUEZ AS HIS ATTORNEY IN
FACT

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES} SS.                     **Kumar Venkatesan**
On ___ JAN 19, 2010 ___ before me    **Notary Public** ___ Notary Public, personally appeared
EDWIN RODRIGUEZ ___ who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s). or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand official seal.

```
                                                 KUMAR VENKATESAN
                                                 Commission # 1740984
                                                 Notary Public - California
                                                 Los Angeles County
                                                 My Comm. Expires May 20, 2011
```

Signature ___

(This area for official notarial seal)

# EXHIBIT 11

PlnDue, DebtEd, DISMISSED, CLOSED

# U.S. Bankruptcy Court
## Northern District of California (Oakland)
### Bankruptcy Petition #: 10-40266

|  |  |
|---|---|
| | *Date filed:* 01/11/2010 |
| *Assigned to:* Judge Edward D. Jellen | *Date terminated:* 03/02/2010 |
| Chapter 13 | *Debtor dismissed:* 01/28/2010 |
| Voluntary | |
| Asset | |

*Debtor disposition:* Dismissed for Failure to File Information

| | |
|---|---|
| ***Debtor*** | represented by **Roderick S. Serrato** |
| **Roderick S. Serrato** | PRO SE |
| 5014 Westside Dr. | |
| San Ramon, CA 94583 | |
| SSN / ITIN: xxx-xx-0524 | |

***Trustee***
**Martha G. Bronitsky**
P.O. Box 5004
Hayward, CA 94540-5004
510-266-5580

***U.S. Trustee***
**Office of the U.S. Trustee/Oak**
Office of the U.S. Trustee
1301 Clay St. #690N
Oakland, CA 94612
(510) 637-3200

| Filing Date | # | Docket Text |
|---|---|---|
| 01/11/2010 | [1](#) | Chapter 13 Voluntary Petition, Fee Amount $274. Filed by Roderick S. Serrato . Incomplete Filings due by 1/25/2010. Section 521 Filings due by 2/25/2010. Order Meeting of Creditors due by 2/10/2010. Chapter 13 Plan due by 1/25/2010. (jmb) Modified on 1/12/2010 CREDITOR LIST WAS NOT FILED; CREDIT COUNSELING CERTIFICATE WAS NOT FILED; EXHIBIT D INDICATES EXIGENT CIRCUMSTANCES, BUT NO MOTION WAS FILED (pl). (Entered: 01/11/2010) |
| | | Receipt of Filing Fee for Chapter 13 Voluntary Petition. Amount |

| 01/11/2010 | | 274.00 from Roderick S. Serrato. Receipt Number 40068988. (admin) (Entered: 01/11/2010) |
| 01/12/2010 | 2 | Notice of Failure to Provide Debtor's Social Security Number . Social Security Form due by 1/19/2010. (pl) (Entered: 01/12/2010) |
| 01/12/2010 | 3 | Order To File Required Documents and Notice Regarding Dismissal . Non-Compliance (Documents) due by 1/26/2010 Chapter 13 Plan due by 1/26/2010 (pl) (Entered: 01/12/2010) |
| 01/14/2010 | 4 | BNC Certificate of Mailing - Notice of Failure to Provide Debtor's Social Security Number (RE: related document(s) 2 Notice of Failure to Provide SSN). Service Date 01/14/2010. (Admin.) (Entered: 01/14/2010) |
| 01/14/2010 | 5 | BNC Certificate of Mailing (RE: related document(s) 3 Order to File Missing Documents). Service Date 01/14/2010. (Admin.) (Entered: 01/14/2010) |
| 01/22/2010 | 6 | Meeting of Creditors with Certificate of Service. 341(a) meeting to be held on 3/25/2010 at 04:00 PM Oakland U.S. Trustee Office Objection to Dischargeability due by 5/24/2010 Proofs of Claims due by 6/23/2010 (Bronitsky, Martha (dk)) (Entered: 01/22/2010) |
| 01/25/2010 | 7 | Request for Notice Filed by Creditor Select Portfolio Servicing, Inc. (Wolf, Alan) (Entered: 01/25/2010) |
| 01/27/2010 | 8 | BNC Certificate of Mailing - Meeting of Creditors. (RE: related document(s) 6 Meeting of Creditors Chapter 13). Service Date 01/27/2010. (Admin.) (Entered: 01/27/2010) |
| 01/28/2010 | 9 | Order Dismissing Case . (pl) (Entered: 01/28/2010) |
| 01/30/2010 | 10 | BNC Certificate of Mailing - Notice of Dismissal. (RE: related document(s) 9 Order to Dismiss Case). Service Date 01/30/2010. (Admin.) (Entered: 01/30/2010) |
| 01/30/2010 | 11 | BNC Certificate of Mailing (RE: related document(s) 9 Order to Dismiss Case). Service Date 01/30/2010. (Admin.) (Entered: 01/30/2010) |
| 02/22/2010 | 12 | Chapter 13 Trustee Final Report and Account . (Bronitsky, Martha (harbor)) (Entered: 02/22/2010) |
| 02/23/2010 | 13 | Request for Notice Filed by Creditor GE Money Bank. (Singh, Ramesh) (Entered: 02/23/2010) |

Case: 10-70234   Doc# 19-1   Filed: 01/12/11   Entered: 01/12/11 18:01:57   Page 72 of 88

| 02/25/2010 | 14 | Order Discharging Chapter 13 Trustee. (pl) (Entered: 02/25/2010) |
| 02/27/2010 | 15 | BNC Certificate of Mailing - Electronic Order (RE: related document(s) 14 Order Discharging Chapter Trustee). Service Date 02/27/2010. (Admin.) (Entered: 02/27/2010) |
| 03/02/2010 |    | Bankruptcy Case Closed. (pl) (Entered: 03/02/2010) |
| 03/05/2010 | 16 | Request for Notice Filed by Creditor Wells Fargo Home Mortgage (Whitson, Melodie) (Entered: 03/05/2010) |

<table>
<tr><td colspan="4"><strong>PACER Service Center</strong></td></tr>
<tr><td colspan="4"><strong>Transaction Receipt</strong></td></tr>
<tr><td colspan="4">11/01/2010 12:53:25</td></tr>
<tr><td><strong>PACER Login:</strong></td><td>gw0015</td><td><strong>Client Code:</strong></td><td></td></tr>
<tr><td><strong>Description:</strong></td><td>Docket Report</td><td><strong>Search Criteria:</strong></td><td>10-40266 Fil or Ent: filed To: 11/1/2010 Doc From: 0 Doc To: 99999999 Term: included Headers: included Format: html</td></tr>
<tr><td><strong>Billable Pages:</strong></td><td>1</td><td><strong>Cost:</strong></td><td>0.08</td></tr>
</table>

# EXHIBIT 12

**DebtEd, DISMISSED, CLOSED**

# U.S. Bankruptcy Court
## Northern District of California (San Jose)
### Bankruptcy Petition #: 10-50396

|  |  |
|---|---|
| | *Date filed:* 01/17/2010 |
| *Assigned to:* Judge Roger L. Efremsky | *Date terminated:* 09/17/2010 |
| Chapter 13 | *Debtor dismissed:* 07/09/2010 |
| Voluntary | |
| Asset | |

*Debtor disposition:* Dismissed for Other Reason

| | |
|---|---|
| **Debtor** | represented by **Brette L. Evans** |
| **Liz Janeth Angeles** | Evans Law Offices |
| 884 Chestnut St | 255 N. Market St. #110 |
| San Jose, CA 95110 | San Jose, CA 95110 |
| SSN / ITIN: xxx-xx-6429 | (408) 298-8910 |
| *aka* | Email: |
| **Liz Janeth Padilla Angeles** | brettelevans@sbcglobal.net |
| *aka* | |
| **Liz Padilla** | |
| *dba* | |
| **Angeles Towing** | |

**Trustee**
**Devin Derham-Burk**
P.O. Box 50013
San Jose, CA 95150-0013
(408) 354-8151

**U.S. Trustee**
**Office of the U.S. Trustee / SJ**
U.S. Federal Bldg.
280 S 1st St. #268
San Jose, CA 95113-3004
( )

| Filing Date | # | Docket Text |
|---|---|---|
| 01/17/2010 | 1 | Chapter 13 Voluntary Petition, Fee Amount $274. Filed by Liz Janeth Angeles. Order Meeting of Creditors due by 02/16/2010. Chapter 13 Plan due by 02/1/2010. (Evans, Brette) (Entered: 01/17/2010) |

| | | |
|---|---|---|
| 01/17/2010 | 2 | Chapter 13 Plan Filed by Debtor Liz Janeth Angeles (RE: related document(s) 1 Voluntary Petition (Chapter 13) filed by Debtor Liz Janeth Angeles). (Evans, Brette) (Entered: 01/17/2010) |
| 01/17/2010 | 3 | Rights and Responsibilities of Chapter 13 Debtors and Their Attorneys Filed by Debtor Liz Janeth Angeles (Evans, Brette) (Entered: 01/17/2010) |
| 01/17/2010 | 4 | Statement of Social Security Number. Filed by Debtor Liz Janeth Angeles (Evans, Brette) (Entered: 01/17/2010) |
| 01/17/2010 | 5 | Chapter 13 Statement of Current Monthly and Disposable Income (Form 22C) Filed by Debtor Liz Janeth Angeles (Evans, Brette) (Entered: 01/17/2010) |
| 01/17/2010 | 6 | Certificate of Credit Counseling Filed by Debtor Liz Janeth Angeles (Evans, Brette) (Entered: 01/17/2010) |
| 01/17/2010 | | Receipt of filing fee for Voluntary Petition (Chapter 13)(10-50396) [misc,volp13] ( 274.00). Receipt number 9982681, amount $ 274.00 (U.S. Treasury) (Entered: 01/17/2010) |
| 01/28/2010 | 7 | Meeting of Creditors with Certificate of Service. 341(a) meeting to be held on 3/4/2010 at 09:30 AM San Jose Room 130 Objection to Dischargeability due by 5/3/2010 Proofs of Claims due by 6/2/2010 Last day to object to confirmation is 3/4/2010**Confirmation Hearing to be held on 3/18/2010 at 02:00 PM San Jose Courtroom 3099 - Efremsky** (Derham-Burk, Devin (cf)) (Entered: 01/28/2010) |
| 01/28/2010 | 8 | Motion to Extend Automatic Stay Filed by Debtor Liz Janeth Angeles (Evans, Brette) (Entered: 01/28/2010) |
| 01/28/2010 | 9 | Notice of Hearing (RE: related document(s) 8 Motion to Extend Automatic Stay Filed by Debtor Liz Janeth Angeles). **Hearing scheduled for 2/10/2010 at 02:00 PM at San Jose Courtroom 3099 - Efremsky.** Filed by Debtor Liz Janeth Angeles (Evans, Brette) (Entered: 01/28/2010) |
| 01/28/2010 | 10 | Memorandum of Points and Authorities in Support of *Motion to Continue the Automatic Stay* (RE: related document(s) 8 Motion to Extend Automatic Stay). Filed by Debtor Liz Janeth Angeles (Evans, Brette) ERROR: EVENT CODE SELECTED DOES NOT MATCH PDF. Modified on 1/29/2010 (aw). (Entered: 01/28/2010) |
| | | Certificate of Service (RE: related document(s) 8 Motion to |

| 01/28/2010 | 11 | Extend Automatic Stay, 9 Notice of Hearing, 10 Memo of Points & Authorities). Filed by Debtor Liz Janeth Angeles (Evans, Brette) (Entered: 01/28/2010) |
| 01/28/2010 |  | Receipt of Relief from Stay Filing Fee. Amount 150.00 from Mcgarrigle, Kenney & Zampiello. Receipt Number 50072974. (admin) (Entered: 01/28/2010) |
| 01/28/2010 | 14 | Motion for Relief from Stay And Declaration of Ron McMahan In Support Thereon RS #PAZ-001, Fee Amount $150, Filed by Other Prof. CEREF Partners I, LP (Attachments: # 1 attach1# 2 attach2) (rdr) (Entered: 02/01/2010) |
| 01/28/2010 | 15 | Notice of Hearing (RE: related document(s) 14 Motion for Relief from Stay And Declaration of Ron McMahan In Support Thereon RS #PAZ-001, Fee Amount $150, Filed by Other Prof. CEREF Partners I, LP). **Hearing scheduled for 2/17/2010 at 10:00 AM at San Jose Courtroom 3099 - Efremsky.** Filed by Other Prof. CEREF Partners I, LP (rdr) (Entered: 02/01/2010) |
| 01/30/2010 | 12 | BNC Certificate of Mailing - Meeting of Creditors. (RE: related document(s) 7 Meeting of Creditors Chapter 13). Service Date 01/30/2010. (Admin.) (Entered: 01/30/2010) |
| 01/30/2010 | 13 | BNC Certificate of Mailing - Chapter 13 Plan. (RE: related document(s) 7 Meeting of Creditors Chapter 13). Service Date 01/30/2010. (Admin.) (Entered: 01/30/2010) |
| 02/08/2010 | 16 | Objection (RE: related document(s) 8 Motion to Extend Automatic Stay). Filed by Other Prof. CEREF Partners I, LP (kn) (Entered: 02/08/2010) |
| 02/08/2010 | 17 | Amended Notice of Hearing (RE: related document(s) 8 Motion to Extend Automatic Stay Filed by Debtor Liz Janeth Angeles). **Hearing scheduled for 2/10/2010 at 10:30 AM at San Jose Courtroom 3099 - Efremsky.** Filed by Debtor Liz Janeth Angeles (Attachments: # 1 Declaration) (Evans, Brette) (Entered: 02/08/2010) |
| 02/09/2010 | 18 | Declaration of Debtor in Support of *Motion to Continue the Stay* (RE: related document(s) 8 Motion to Extend Automatic Stay). Filed by Debtor Liz Janeth Angeles (Evans, Brette) (Entered: 02/09/2010) |
| 02/10/2010 |  | Courtroom Hearing Held (RE: Motion to Extend Automatic Stay - related document(s) 8 ) (Denied for reasons stated on the record.)(cp) (Entered: 02/11/2010) |

| | | |
|---|---|---|
| 02/17/2010 | 19 | Order Denying Motion for Relief From Stay and Confirming no Automatic Stay is in effect. (Related Doc # 14 ) (jd) (Entered: 02/17/2010) |
| 02/17/2010 | 20 | Objection to Confirmation of Chapter 13 Plan *with Certificate of Service*. (Derham-Burk, Devin (harbor)) (Entered: 02/17/2010) |
| 02/17/2010 | 21 | Certificate of Service (RE: related document(s) 19 Order on Motion for Relief From Stay). Filed by Other Prof. CEREF Partners I, LP (tm) (Entered: 02/19/2010) |
| 02/17/2010 | 22 | Hearing Held (RE: related document(s) 14 Motion for Relief from Stay RS #PAZ-001, Fee Amount $150,). No stay in effect. (rdr) (Entered: 02/23/2010) |
| 02/26/2010 | 23 | Request for Notice *and Certificate of Service* Filed by Creditor Select Portfolio Servicing, Inc. (Wolf, Alan) (Entered: 02/26/2010) |
| 03/04/2010 | 24 | Objection to Confirmation of Plan Filed by Creditor Select Portfolio Servicing, Inc. (Attachments: # 1 Exhibits# 2 Certificate of Service) (Wolf, Alan) (Entered: 03/04/2010) |
| 03/12/2010 | 25 | Motion for Relief from Stay RS #ASW-680, Fee Amount $150, Filed by Creditor U.S. Bank National Association, as trustee, on behalf of the holders of the Asset Backed Securities Corporation Home Equity Loan Trust, Series MO 2006-HE6 Asset Backed Pass-Through Certificates, Serie (Attachments: # 1 RS Cover Sheet) (Wolf, Alan) (Entered: 03/12/2010) |
| 03/12/2010 | | Receipt of filing fee for Motion for Relief From Stay(10-50396) [motion,mrlfsty] ( 150.00). Receipt number 10357612, amount $ 150.00 (U.S. Treasury) (Entered: 03/12/2010) |
| 03/12/2010 | 26 | Declaration of Jo-Ann Goldman in Support of *Motion for Relief from the Automatic Stay* (RE: related document(s) 25 Motion for Relief From Stay). Filed by Creditor U.S. Bank National Association, as trustee, on behalf of the holders of the Asset Backed Securities Corporation Home Equity Loan Trust, Series MO 2006-HE6 Asset Backed Pass-Through Certificates, Serie (Attachments: # 1 Exhibit 1# 2 Exhibit 2# 3 Exhibit 3# 4 Exhibit 4# 5 Exhibit 5# 6 Exhibit 6# 7 Exhibit 7# 8 Exhibit 8# 9 Exhibit 9# 10 Exhibit 10# 11 Exhibit 11) (Wolf, Alan) (Entered: 03/12/2010) |
| | | Notice of Hearing *on Motion for Relief from the Automatic Stay* (RE: related document(s) 25 Motion for Relief from Stay RS |

| | | |
|---|---|---|
| 03/12/2010 | [27](#) | #ASW-680, Fee Amount $150, Filed by Creditor U.S. Bank National Association, as trustee, on behalf of the holders of the Asset Backed Securities Corporation Home Equity Loan Trust, Series MO 2006-HE6 Asset Backed Pass-Through Certificates, Serie). **Hearing scheduled for 3/31/2010 at 10:00 AM at San Jose Courtroom 3099 - Efremsky.** Filed by Creditor U.S. Bank National Association, as trustee, on behalf of the holders of the Asset Backed Securities Corporation Home Equity Loan Trust, Series MO 2006-HE6 Asset Backed Pass-Through Certificates, Serie (Attachments: # [1](#) Certificate of Service) (Wolf, Alan) (Entered: 03/12/2010) |
| 03/17/2010 | | Meeting of Creditors Held. *On 3/4/2010; Debtor and Attorney of Record present; 341 Concluded; PHC to be set.* (Derham-Burk, Devin (cas)) (Entered: 03/17/2010) |
| 03/18/2010 | [28](#) | Application for Compensation for Brette L. Evans, Debtor's Attorney, Fee: $6250.00, Expenses: $0.00. Filed by Attorney Brette L. Evans (Attachments: # [1](#) Certificate of Service) (Evans, Brette) (Entered: 03/18/2010) |
| 03/18/2010 | | Confirmation Hearing Continued re: Chapter 13 Plan. **(Confirmation Hearing to be Held on 4/15/2010 02:00 PM at San Jose Courtroom 3099 - Efremsky)** (cp) (Entered: 03/19/2010) |
| 03/23/2010 | [29](#) | Amended Objection to Confirmation of Chapter 13 Plan *with Certificate of Service*. (Derham-Burk, Devin (harbor)) (Entered: 03/23/2010) |
| 03/31/2010 | | Courtroom Hearing Continued (RE: Motion for Relief From Stay - related document(s) [25](#) ) **(Continued to 4/28/2010 10:00 AM at San Jose Courtroom 3099 - Efremsky)** (File a supplemental declaration outlining all bankruptcy's and status.)(rdr) (Entered: 04/01/2010) |
| 04/01/2010 | [30](#) | Pre-Hearing Statement (RE: related document(s) [24](#) Objection to Confirmation of the Plan, [29](#) Trustee's Objection to Confirmation of Plan (batch)). Filed by Debtor Liz Janeth Angeles (Evans, Brette) (Entered: 04/01/2010) |
| 04/02/2010 | [31](#) | Certificate of Service (RE: related document(s) [30](#) Pre-Hearing Statement). Filed by Debtor Liz Janeth Angeles (Evans, Brette) (Entered: 04/02/2010) |
| | | Supplemental Declaration of Jo-Ann Goldman in Support of *Motion for Relief from the Automatic Stay* (RE: related document (s) [25](#) Motion for Relief From Stay). Filed by Creditor U.S. Bank |

| | | |
|---|---|---|
| 04/08/2010 | 32 | National Association, as trustee, on behalf of the holders of the Asset Backed Securities Corporation Home Equity Loan Trust, Series MO 2006-HE6 Asset Backed Pass-Through Certificates, Serie (Attachments: # 1 Exhibits# 2 Proof of Service) (Wolf, Alan) (Entered: 04/08/2010) |
| 04/15/2010 | | Confirmation Hearing Continued re: Chapter 13 Plan. **(Confirmation Hearing to be Held on 6/17/2010 02:00 PM at San Jose Courtroom 3099 - Efremsky)** (cp) (Entered: 04/16/2010) |
| 04/26/2010 | 33 | Statement of Non-Opposition (RE: related document(s) 25 Motion for Relief From Stay, 26 Declaration, 27 Notice of Hearing, 32 Declaration). Filed by Debtor Liz Janeth Angeles (Attachments: # 1 Certificate of Service) (Evans, Brette) (Entered: 04/26/2010) |
| 04/28/2010 | | Courtroom Hearing Held (RE: Motion for Relief From Stay - related document(s) 25 ) (Granted, 4001(a)(3) waived. No finding as to 362(d)(4).)(rdr) (Entered: 04/28/2010) |
| 04/29/2010 | 34 | Certificate of Service *OF THE ORDER GRANTING THE MOTION FOR RELIEF FROM THE AUTOMATIC STAY* (RE: related document(s) 25 Motion for Relief From Stay). Filed by Creditor U.S. Bank National Association, as trustee, on behalf of the holders of the Asset Backed Securities Corporation Home Equity Loan Trust, Series MO 2006-HE6 Asset Backed Pass-Through Certificates, Serie (Wolf, Alan) (Entered: 04/29/2010) |
| 05/07/2010 | 35 | Order Granting Motion for Relief From Stay (Related Doc # 25 ) (jes) (Entered: 05/07/2010) |
| 05/09/2010 | 36 | BNC Certificate of Mailing (RE: related document(s) 35 Order on Motion for Relief From Stay). Service Date 05/09/2010. (Admin.) (Entered: 05/09/2010) |
| 05/14/2010 | 37 | Motion to Dismiss Case *Pre-Confirmation Pursuant to 11 U.S.C. Sect 1307(c)(1)* Filed by Trustee Devin Derham-Burk (Attachments: # 1 Exhibit A# 2 Declaration of Devin Derham-Burk in Support of Motion to Dismiss Pre-Confirmation Pursuant to 11 U.S.C. Sect 1307(c)(1)) (Derham-Burk, Devin (kh)) (Entered: 05/14/2010) |
| | | Notice of Hearing *on Motion to Dismiss Pre-Confirmation Pursuant to 11 U.S.C. Sect 1307(c)(1)* (RE: related document(s) 37 Motion to Dismiss Case *Pre-Confirmation Pursuant to 11 U.S.C. Sect 1307*). **Hearing scheduled for 6/17/2010 at 02:00 PM at San Jose Courtroom 3099 - Efremsky.** *Filed by Trustee* |

| 05/14/2010 | [38](#) | *Devin Derham-Burk (Attachments: # [1](#) Certificate of Service) (Derham-Burk, Devin (kh)) (Entered: 05/14/2010)* |
|---|---|---|
| 05/14/2010 | [39](#) | Hearing Set On (RE: related document(s) [37](#) Motion to Dismiss Case *Pre-Confirmation Pursuant to 11 U.S.C. Sect 1307). **Hearing scheduled for 6/17/2010 at 02:00 PM at San Jose Courtroom 3099 - Efremsky.** (myt) (Entered: 05/14/2010)* |
| 05/16/2010 | [40](#) | BNC Certificate of Mailing -Motion to Convert or Dismiss . (RE: related document(s) [39](#) Hearing Set). Service Date 05/16/2010. (Admin.) (Entered: 05/16/2010) |
| 06/03/2010 | [41](#) | Pre-Hearing Statement (RE: [20](#) Objection to Confirmation of Chapter 13 Plan, [24](#) Objection to Confirmation of Plan, [29](#) Amended Objection to Confirmation of Chapter 13 Plan) Filed by Debtor Liz Janeth Angeles (Attachments: # [1](#) Certificate of Service) (Evans, Brette) ERROR: NO LINKAGE. CORRECTIVE ENTRY: COURT ADDED LINKAGE TO DOCUMENTS #20, #24, AND #29. Modified on 6/4/2010 (jes). (Entered: 06/03/2010) |
| 06/17/2010 | | Courtroom Hearing Held (RE: Motion to Dismiss Case - related document(s) [37](#) ) (Granted.)(rdr) (Entered: 06/21/2010) |
| 06/17/2010 | | Courtroom Hearing Held (RE: Meeting of Creditors Chapter 13 - related document(s) [7](#) ) (Off calendar, case dismissed on trustee's motion.)(tb) (Entered: 06/22/2010) |
| 07/09/2010 | [42](#) | Order of Dismissal Prior to Confirmation. (jes) (Entered: 07/09/2010) |
| 07/09/2010 | [43](#) | Notice of Dismissal (admin) (Entered: 07/09/2010) |
| 07/11/2010 | [44](#) | BNC Certificate of Mailing - Electronic Order (RE: related document(s) [42](#) Order of Dismissal Prior to Confirmation). Service Date 07/11/2010. (Admin.) (Entered: 07/11/2010) |
| 07/14/2010 | [45](#) | BNC Certificate of Mailing - Notice of Dismissal. (RE: related document(s) [43](#) Notice of Dismissal). Service Date 07/14/2010. (Admin.) (Entered: 07/14/2010) |
| 09/15/2010 | [46](#) | Chapter 13 Trustee Final Report and Account . (Derham-Burk, Devin (harbor)) (Entered: 09/15/2010) |
| 09/17/2010 | [47](#) | Final Decree. (kd) (Entered: 09/17/2010) |
| 09/17/2010 | | Bankruptcy Case Closed. (kd) (Entered: 09/17/2010) |

| | | |
|---|---|---|
| 09/19/2010 | <u>48</u> | BNC Certificate of Mailing - Electronic Order (RE: related document(s) <u>47</u> Final Decree). Service Date 09/19/2010. (Admin.) (Entered: 09/19/2010) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 11/02/2010 10:37:01 | | | |
| **PACER Login:** | gw0015 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 10-50396 Fil or Ent: filed To: 11/2/2010 Doc From: 0 Doc To: 99999999 Term: included Headers: included Format: html |
| **Billable Pages:** | 4 | **Cost:** | 0.32 |

# EXHIBIT  13

PlnDue, Incomplete, RestrictedDISMISSED

# U.S. Bankruptcy Court
## Central District Of California (Los Angeles)
## Bankruptcy Petition #: 2:10-bk-48802-EC

*Date filed:*    09/13/2010
*Debtor dismissed:*    09/23/2010

*Assigned to:* Ellen Carroll
Chapter 13
Voluntary
Asset

*Debtor disposition:* Dismissed for Failure to File Information

| | |
|---|---|
| **Debtor**<br>**Ramses Garcia**<br>11253 Quinn St<br>Downey, CA 90211<br>SSN / ITIN: xxx-xx-1033 | represented by **Ramses Garcia**<br>PRO SE |

**Trustee**
**Kathy A Dockery (TR)**
700 S. Flower Street, Suite 1950
Los Angeles, CA 90017
(213) 996-4400

**U.S. Trustee**
**United States Trustee (LA)**
725 S Figueroa St., 26th Floor
Los Angeles, CA 90017

| Filing Date | # | Docket Text |
|---|---|---|
| | | Chapter 13 Voluntary Petition . Receipt Number o, Fee Amount $274 Filed by Ramses Garcia Schedule A due 9/27/2010. Schedule B due 9/27/2010. Schedule C due 9/27/2010. Schedule D due 9/27/2010. Schedule E due 9/27/2010. Schedule F due 9/27/2010. Schedule G due 9/27/2010. Schedule H due 9/27/2010. Schedule I due 9/27/2010. Schedule J due 9/27/2010. Statement of Financial Affairs due 9/27/2010. Chapter 13 Plan due by 9/27/2010. Statement - Form 22C Due: 9/27/2010. Summary of schedules due 9/27/2010. Declaration concerning debtors schedules due 9/27/2010. Cert. of Credit Counseling due by 9/27/2010. Statistical Summary due 9/27/2010. Debtor Certification of Employment Income due by 9/27/2010. Section |

Case: 10-70234    Doc# 19-1    Filed: 01/12/11    Entered: 01/12/11 18:01:57    Page 84 of 88

| | | |
|---|---|---|
| 09/13/2010 | 1 | 316 due 10/28/2010. Incomplete Filings due by 9/27/2010. (Ghaltchi, Dina) (Entered: 09/13/2010) |
| 09/13/2010 | 2 | Meeting of Creditors with 341(a) meeting to be held on 10/15/2010 at 10:00 AM at RM 103, 725 S Figueroa St, Los Angeles, CA 90017. Confirmation hearing to be held on 12/02/2010 at 01:30 PM at Crtrm 1639, 255 E Temple St., Los Angeles, CA 90012. Proof of Claim due by 01/13/2011. (Ghaltchi, Dina) (Entered: 09/13/2010) |
| 09/13/2010 | 3 | Statement of Social Security Number(s) Form B21 Filed by Debtor Ramses Garcia . (Ghaltchi, Dina) (Entered: 09/13/2010) |
| 09/13/2010 | | Receipt of Chapter 13 Filing Fee - $274.00 by 12. Receipt Number 20093875. (admin) (Entered: 09/14/2010) |
| 09/15/2010 | 4 | BNC Certificate of Notice (RE: related document(s) 2 Meeting (AutoAssign Chapter 13)) No. of Notices: 5. Service Date 09/15/2010. (Admin.) (Entered: 09/15/2010) |
| 09/15/2010 | 5 | BNC Certificate of Notice (RE: related document(s) 1 Voluntary Petition (Chapter 13) filed by Debtor Ramses Garcia) No. of Notices: 1. Service Date 09/15/2010. (Admin.) (Entered: 09/15/2010) |
| 09/15/2010 | 6 | BNC Certificate of Notice (RE: related document(s) 1 Voluntary Petition (Chapter 13) filed by Debtor Ramses Garcia) No. of Notices: 1. Service Date 09/15/2010. (Admin.) (Entered: 09/15/2010) |
| 09/23/2010 | 7 | Order Dismissing Case WITH 180 DAY BAR from refiling a new bankruptcy case - **Debtor** Dismissed. "I, Sonia Beauchamp, Deputy Clerk who is making this entry; certify that service on all parties under Section II was completed." Signed on 9/23/2010. (Beauchamp, Sonia) (Entered: 09/27/2010) |
| 09/27/2010 | 8 | Request for courtesy Notice of Electronic Filing (NEF) Filed by Alan Steven Wolf on behalf of Courtesy NEF. (Wolf, Alan) (Entered: 09/27/2010) |
| 09/27/2010 | 9 | Notice of dismissal with restriction for against debtor's refiling (BNC) (Beauchamp, Sonia) (Entered: 09/27/2010) |
| 09/29/2010 | 10 | BNC Certificate of Notice (RE: related document(s) 9 Notice of dismissal with restriction for against debtor's refiling (BNC)) No. of Notices: 4. Service Date 09/29/2010. (Admin.) (Entered: 09/29/2010) |

| 10/08/2010 | [11](#) | Chapter 13 Trustee's Final Report and Account . (Dockery (TR), Kathy) (Entered: 10/08/2010) |
| 10/08/2010 | [12](#) | Proof of service Filed by (RE: related document(s) 11 Chapter 13 Trustee's Final Report and Account (batch)). (Dockery (TR), Kathy) (Entered: 10/08/2010) |
| 10/14/2010 | [13](#) | ORDER discharging chapter 13 panel trustee and exonerate bond liability Signed on 10/14/2010. (Beauchamp, Sonia) (Entered: 10/14/2010) |
| 10/22/2010 | [14](#) | Request for courtesy Notice of Electronic Filing (NEF) Filed by Ramesh Singh on behalf of Courtesy NEF. (Singh, Ramesh) (Entered: 10/22/2010) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 11/02/2010 10:44:11 | | | |
| **PACER Login:** | gw0015 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:10-bk-48802-EC Fil or Ent: filed To: 11/2/2010 Doc From: 0 Doc To: 99999999 Term: included Format: html |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |

# EXHIBIT 14

```
DEBTOR:              RODRIGUEZ
CASE NO.:            10-70234JG
PETITION FILED:  September 6, 2010

                    PRE-PETITION ARREARS

2    payments at    $    4,388.65  =  $       8,777.30
6    payments at    $    4,984.13  =  $      29,904.78
6    payments at    $    4,580.74  =  $      27,484.44
12   payments at    $    4,395.71  =  $      52,748.52

                    Accrued Late Charges $      1,053.60
                         Escrow Advances $     34,299.60
                    Interest on Advances $          9.97
                    Foreclosure Fees/Costs $     1,064.37
                    Less Funds in Suspense $    -4,076.34

TOTAL PRE-PETITION ARREARS:          $      151,266.24

                    POST-PETITION ARREARS
                       AS OF 11/17/10

The loan is post-petition due for 10/01/10 through 11/01/10

2    payments at    $    4,388.74  =  $       8,777.48

TOTAL POST-PETITION ARREARS:         $        8,777.48

TOTAL ARREARS AS OF 11/17/10     = $       160,043.72
```

Matter I.D. 6401-6247